# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**MACK ARTHUR BOWENS**             **MOVANT**

**v.**             **No. 2:00CR94-P**

**UNITED STATES OF AMERICA**             **RESPONDENT**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion. Bowens has not replied. The matter is ripe for resolution. For the reasons set forth below, the instant motion will be denied.

## Facts and Procedural Posture[1]

In 1999 the Tunica County Sheriff's Department, the Mississippi Bureau of Narcotics ("MBN"), and the FBI conducted a sting operation, using informants under surveillance to make controlled buys of crack cocaine from Mack Arthur Bowens ("Bowens") and Willie Hampton ("Hampton"). Lieutenant Hudson ("Hudson") of Tunica County, James Jones ("Jones") of the MBN, and Special Agent Tom Bohlke ("Bohlke") of the FBI, recruited George Butler ("Butler") (who had previously been arrested for possession of crack cocaine) to make a controlled buy from Bowens. Government witnesses testified that on December 15, 1999, Butler entered a trailer occupied by Bowens and Jake Cotton, Bowens' associate. Butler carried marked money and wore a wire. Hudson testified that on the audiotape he heard Bowens tell Butler that his police source knew that Butler was not a good customer. Bowens said, "I can't go direct with

---

[1] The facts of this case have been taken nearly verbatim from the facts set forth in the Fifth Circuit opinion of November 1, 2004, affirming Bowens' convictions and sentences.

you." Cotton and Butler then stepped outside the trailer, where Butler paid Cotton with the marked money. The two circled the block at Cotton's request, Cotton gave Butler the crack cocaine. Butler returned directly to the agents and gave them the drugs. Cotton was arrested and later testified at Bowens' trial that the crack cocaine belonged to Bowens, who told Cotton to sell the drugs to Butler.

Later that day, Butler made another controlled buy from Bowens and Cotton. Bowens then told Butler to go see Cotton, who waited at a different location. Butler drove to see Cotton, who told Butler that he would get the drugs from Bowens. Again, they circled the block at Cotton's request, then he sold the drugs to Butler, who again delivered the drugs to the agents.

In March, 2000, Tunica law enforcement officers arrested Rubby Gooden on drug charges. She told Lieutenant Hudson that she would help him prosecute her drug sources if he helped her with the charges. They did not come to a formal agreement, but Gooden identified several sources of her drugs, including Bowens and Hampton, stating that she often bought crack from them. On March 20, 2000, Gooden made a controlled buy of crack cocaine from Hampton – at his sister's house. Hudson testified that the voice on the audiotape was Hampton's, that Hampton's car was outside the house where the drug deal occurred, and that the house belonged to Hampton's sister.

On March 29, 2000, Gooden made another controlled buy of crack cocaine, this time from Mack Arthur Bowens. She went Bowens' and Cotton's trailer, bought the drugs, and returned to the agents. Bowens' car was outside the trailer at the time of the buy. Gooden testified that Bowens laid the crack on the counter, where she picked it up and replaced it with the buy money. She told the agents that Bowens was in the trailer cutting up a large amount of

crack cocaine on a dinner plate.

Based on these controlled buys, the agents obtained and executed multiple search warrants. One warrant was executed a few hours after Gooden's March 20, 2000, buy at the house of Hampton's sister (where Gooden and Butler bought drugs from Hampton). Agents recovered the marked buy money (in Hampton's right front pocket), as well as 7 grams of crack cocaine, plastic bags, razors, scales, and a cutting agent in a bedroom where Hampton kept his personal effects.

Agents executed another search warrant for a garage Hampton was purchasing and in which he kept his vehicle and belongings. Inside the garage, agents found a vehicle Hampton had driven in August 1999, and documents identifying Hampton as the owner. Inside the vehicle agents also found 7.5 pounds of cocaine, triple-beam scales, a bulletproof vest, wrapping material, and coffee grounds.

After Rubby Gooden's controlled buy from Mack Arthur Bowens on March 29, 2000, agents obtained a search warrant for the trailer where the buy occurred. As agents approached the trailer, Bowens was leaving in his car. They pulled him over and found the marked buy money in his pockets. Inside the trailer, agents seized a dinner plate that tested positive for trace amounts of crack cocaine.

Bowens was indicted on May 25, 2000, for (1) conspiracy to distribute and possess with intent to distribute in excess of 500 grams of cocaine (Count One); (2) distribution of crack cocaine, aided and abetted by Jack Cotton, at approximately 10:00 a.m. on December 15, 1999 (Count Two); (3) distribution of crack cocaine, aided and abetted by Jack Cotton, at approximately 3:00 p.m. on December 15, 1999 (Count Three); (4) distribution of crack cocaine

on March 29, 2000 (Count Seven); (5) possession with intent to distribute in excess of 5 grams of crack cocaine (Count Eight); and (6) corruptly endeavoring to obstruct justice by causing a government witness to sign a false and fraudulent affidavit in an effort in undermine testimony (Count Nine).[2]

On January 30, 2001, Mack Arthur Bowens was convicted by a jury of four counts of drug (crack cocaine) violations and one count of obstruction of justice. Bowens was acquitted of a conspiracy charge. Three of the drug counts carried penalties of not more than 20 years per count and the fourth drug count carried a maximum penalty of not less than 5 years nor more than 40 years. The obstruction count provided for a sentence of not more than 10 years.

The Fifth Circuit Court of Appeals affirmed Bowens' conviction and sentence. *See United States v. Bowens*, 108 Fed. Appx. 945 (5th Cir. 2004)(unpublished opinion). Bowens then filed a petition for writ of *certiorari* arguing that his sentence was imposed in violation of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). On February 28, 2005, the United States Supreme Court granted Bowens' request, vacated the sentence and remanded the case to the Fifth Circuit Court of Appeals for further consideration in light of *Booker*. *Bowens v. United States*, 125 S. Ct. 1410 (2005).

On January 4, 2006, the Court of Appeals, solely on *Booker* grounds, remanded the case to the district court to "resentence Bowens if, in its discretion under the now-advisory Guidelines, it chooses to do so." *United States v. Bowens*, 161 Fed. Appx. 383 (5th Cir. 2006)(unpublished opinion). On April 4, 2007, Bowens', with counsel, appeared before this

---

[2]Hampton was indicted on similar charges arising out of these events, then convicted by a jury of multiple offenses.

Court for resentencing. After hearing Bowens' objections and argument of counsel, the court resentenced Bowens to 480 months, the same sentence he received initially. Judgement was entered on April 23, 2007. Bowens did not appeal the sentence imposed.

On July 2, 2007, Bowens filed a *pro se* motion for the presiding judge to recuse himself from Bowens' "soon to be file[d] 2255 Motion." On August 15, 2007, the court denied the motion on the merits. Bowens appealed the Court's decision to the Fifth Circuit Court of Appeals. On September 8, 2008, the Court rejected Bowens' appeal, holding that, as Bowens had not yet filed his § 2255 motion, there was no matter in controversy; as such, neither court had jurisdiction to entertain the motion. *Bowens v. United States*, Case No. 07-60678 (5th Cir. September 8, 2008).

In the interim, on February 29, 2008, Bowens filed the present *pro se* motion to vacate and set aside his conviction and sentence under 28 U.S. 2255.

## Grounds for Relief

Bowens sets forth eleven interrelated grounds for relief, which the court has restated for the sake of brevity and clarity.

**Ground One:** Counsel was ineffective because he did not argue that the government failed to prove that the weight of the cocaine used to sustain his conviction and sentence exceeded 5 grams, as set forth in Count 8 of the indictment.

**Ground Two:** Counsel was ineffective because he failed to develop a viable alternative defense strategy after the court excluded evidence of an FBI agent's attempt to manufacture evidence to incriminate the defendants.

**Ground Three:** Counsel was ineffective because he did not interview Tunica County Sheriff Jerry Ellington regarding the incarceration of government witness Rubby Lee Gooden.

**Ground Four:** Counsel was ineffective because he did not obtain evidence of Rubby Lee Gooden's "illegal incarceration" prior to trial – because law enforcement officials did not disclose the information when counsel inquired about it.

**Ground Five:** Counsel was ineffective because he failed to investigate the criminal background of government witness George Butler who, according to the movant, was not arrested on crack cocaine charges on December 7, 1999, as stated by George Butler, Jerome Hudson, Mississippi Bureau of Narcotics Agent James Jones, and FBI agent Thomas Bohlke, but instead was arrested for aggravated assault.

**Ground Six:** Counsel was ineffective for failing to interview government witness Rubby Lee Gooden, even though prior to trial she provided defense counsel multiple affidavits stating that Jerome Hudson, who led the Tunica County Sheriff's Department Narcotics Unit, had directed her to frame movant Mack Arthur Bowens.

**Ground Seven:** Counsel was ineffective for failing to interview government witness Henry Joseph Cotton, also known as Jake Cotton, or to investigate his criminal history, even though Cotton testified at a pretrial hearing in this case that Jerome Hudson had planted crack cocaine inside and outside of movant Bowens' house and in his vehicles. Cotton also testified that Mississippi Bureau of Narcotics agent James Jones had threatened his life if he did not cooperate in the effort to frame Bowens.

**Ground Eight:** Counsel was ineffective for failing to object to the testimony of government witness Melvin Shipp, who mentioned during his testimony that Bowens had been incarcerated and, upon his release, assumed leadership of Shipp's illegal drug business. This testimony improperly placed Bowens' criminal history before the jury, causing prejudice to Bowens' defense.

**Ground Nine:** Counsel was ineffective because he did not inform the Fifth Circuit (after its ruling on his appeal) that the district judge presiding over Bowens' criminal proceeding also presided over the civil action Rubby Lee Gooden filed against Jerome Hudson and others. The subject of the suit was whether Gooden's detention prior to Bowens' trial was in violation of the law – a hotly disputed issue in Bowens' criminal trial.

**Ground Ten:** Counsel was ineffective because he failed to uncover evidence, not disclosed by the government, that would have exonerated Bowens – depositions of Sheriff Jerry Ellington and Jerome Hudson that would tend to show that Hudson coerced witness Rubby Lee Gooden to testify against Bowens.

**Ground Eleven:** The court lacked jurisdiction over Bowens because the state exercised jurisdiction over Bowens first and never relinquished that jurisdiction.

**Standard for Ineffective Assistance of Counsel Claims**

To prove that his counsel rendered ineffective representation while defending him or prosecuting his appeal, Mack Arthur Bowens must prove that counsel's representation was deficient, and that the deficiency prejudiced his legal position. *Strickland v. Washington*, 466 U.S. 668 (1984). Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). As discussed below, Bowens cannot meet this standard.

**Procedural Bar: Grounds One, Three, Four, Six, and Ten**

A movant under 28 U.S.C. § 2255 faces procedural *bar*[3] if the Court of Appeals has already ruled on a given issue – and procedural *default*[4] if the movant fails to raise the issue on

---

[3] *United States v. Kalish,* 780 F.2d 506, 508 (5th Cir.), *cert. denied,* 476 U.S. 1118 (1986).

[4] *United States v. Frady,* 456 U.S. 152, 164, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Shaid,* 937 F.2d 228, 231-32 (5th Cir.1991).

direct appeal. As the Fifth Circuit Court of Appeals has already ruled on the *substantive*[5] issues Bowens raises in Grounds One, Three, Four, Six, and Ten of the present petition, this court may not review them because they are procedurally barred. *Kalish,* 780 F.2d at 508.

Bowens alleges in Ground One of his petition that counsel was ineffective for failing to argue that the government did not prove that the amount of cocaine used to support Count Eight of the indictment exceeded 5 grams. The Fifth Circuit Court of appeals, however, held that the evidence was sufficient to sustain Bowens' conviction on this charge. *United States v. Bowens*, 108 Fed. Appx. 945, 963 (5th Cir. 2004)(unpublished opinion). As the Fifth Circuit has found the evidence in the case sufficient to sustain Bowens' conviction on this charge, counsel rendered effective representation in deciding not to raise the issue. In any case, the issue is foreclosed by the Fifth Circuit's ruling. As such, this ground for relief is procedurally barred.

Bowens alleges in Grounds Three, Four, Six, and Ten that counsel was ineffective for failing to acquire more evidence, in the form of interviews and additional investigation, to prove that Jerome Hudson and others illegally detained government witness Rubby Lee Gooden in order to coerce her cooperation in this case. Bowens has taken the substantive claims he presented to the Fifth Circuit – and recast them as ineffective assistance of counsel claims – attempting, as it were, to stir last week's casserole and serve it as a new dish. The court has, however, lost its appetite for these claims.

---

[5] For the purposes of the present § 2255 motion, Bowens raises these claims in the context of ineffective assistance of counsel – claiming that counsel failed to raise these issues during the trial or appeal of this case. The Fifth Circuit has, however, decided that the facts underlying these claims do not warrant relief. If the underlying claims do not warrant relief, then Bowens suffered no prejudice to his defense, and counsel gave effective representation. *See Strickland v. Washington*, 466 U.S. 668 (1984).

In Ground Three Bowens argues that counsel should have interviewed Tunica County Sheriff Jerry Ellington regarding Gooden's detention. In Ground Four, Bowens argues that counsel did not seek more information about Gooden's detention after law enforcement officers did not disclose the information after counsel inquired. In Ground Six Bowens alleges that counsel was ineffective for failing to interview witness Rubby Lee Gooden prior to trial, even though she provided multiple affidavits to counsel that Jerome Hudson had directed her to frame Bowens. In Ground Ten, Bowens alleges that counsel was ineffective because he failed to uncover evidence exonerating Bowen – depositions of Sheriff Jerry Ellington and Jerome Hudson.

The Fifth Circuit has rejected Bowens' claims (in Ground Six) that Gooden's affidavits warrant a new trial, *Bowens*, 108 Fed. Appx. at 959, n. 41. In addition, this court – and the Fifth Circuit – also rejected the argument that Sheriff Ellington's deposition testimony warranted a new trial (in Ground Ten) when it was presented in a motion for § 2255 relief by Bowens' co-defendant, Willie Hampton. This court held that "Ellington's deposition does not present any relevant, non-cumulative, newly discovered evidence of Lieutenant Hudson's actions that would warrant consideration on § 2255 review." In denying Hampton's certificate of appealability, the Fifth Circuit Court of Appeals affirmed that holding. *Hampton v. United States*, Case No. 08-60040 (5th Cir. 2008). As the facts are identical in the present case, the court sees no reason to alter its ruling here.

As to the claims that counsel did not interview or take statements from Gooden (in Ground Six) or Ellington ( in Ground Three) – or seek more information from law enforcement officials regarding Gooden's detention (in Ground Four) – the court holds that they are

procedurally barred because they are merely different ways of stating the same claim the Fifth Circuit rejected – that Jerome Hudson and others coerced Rubby Gooden to testify against Bowens. In any event, these claims are groundless. Counsel was well-prepared to question these witnesses at trial – and subjected each of them to withering cross-examination. The court cannot fathom what new information Bowens believes counsel could have obtained from these witnesses with the inquiries proposed (or how such new information would have changed the outcome of his case, given the overwhelming evidence of his guilt). Indeed, Bowens has offered none. As the Bowens' claims in Grounds Three, Four, Six, and Ten are simply restatements of matters ruled upon by the Fifth Circuit, they are both procedurally barred and groundless – and will be dismissed.

## Frivolous Claim: Ground Two

In Ground Two Bowens argues that counsel was ineffective because he failed to develop an alternative defense strategy after the court excluded evidence of an FBI agent's attempt to manufacture evidence against Bowens in another case. This claim is absurd. First, the Fifth Circuit ruled that, although the court erred in excluding the evidence, the error was harmless, given the government's "strong corroborating testimony and evidence of guilt." *United States v. Bowens*, 108 Fed. Appx. 945, 954 (5th Cir. 2004). As the error caused Bowens no harm, he can show no prejudice under the second prong of the *Strickland* test. More importantly, however, Bowens' counsel mounted a vigorous and effective defense in this case, with a clearly defined and rational strategy – to undermine the credibility of the government's witnesses. Counsel not only attacked the credibility of the witnesses who were admittedly drug users and sellers; he also attacked the credibility of the lead law enforcement witness, Jerome Hudson, painting him as the

-10-

center of a web of corruption in the Tunica County Sheriff's Department. Due in large part to counsel's efforts, the jury acquitted Bowens on the conspiracy charge in Count One of the Superseding Indictment. Even a cursory review of the record in this case reveals the exemplary representation Bowens received from defense counsel. Bowens' conviction arose, not out of poor representation, but out of overwhelming evidence of his guilt. This ground for relief is devoid of merit and will be denied.

## Not Supported in the Record: Grounds Five and Seven

Bowens argues in Ground Five of his § 2255 motion that counsel was ineffective for failing to investigate the criminal history of government witness George Butler who, according to Bowens, was not arrested on December 7, 1999, on crack cocaine charges (as stated by government witnesses), but instead was arrested for aggravated assault. The record, however, belies this allegation. First, counsel brought out this very information while cross-examining Jerome Hudson. Trial Transcript, Vol. VI, p. 243-254. In addition, both the government and trial counsel elicited this information during the direct and cross-examination of George Butler. Trial Transcript, Vol. IX, p. 977-978, 1006-1009.

Likewise, Bowens argues in Ground Seven of his § 2255 motion that counsel was ineffective for failing to interview government witness Henry Joseph Cotton – or investigate his criminal history. Such an inquiry, according to Bowens, would have led to the discovery that Cotton had been arrested for several felony drug offenses for which he was awaiting trial. Indeed, Bowens himself had posted bond for Cotton in these very offenses. Cotton testified in a pretrial hearing that he had witnessed Jerome Hudson planting drugs in Bowens' home and vehicle – and that Mississippi Bureau of Narcotics Agent James Jones had threatened Cotton's

life if he did not assist the government in framing Bowens. This information, again, came out during defense counsel's cross-examination of Cotton. Cotton testified that he pled guilty to aiding and abetting the distribution of crack cocaine with Bowens and had received five years in prison. Cotton also testified that he was a cooperating witness and hoped to get a sentence reduction as a result of his testimony. (Trial Transcript, Vol. X, 1151-1152). On cross-examination defense counsel exposed Cotton's addiction to crack cocaine. Indeed, Cotton admitted that he used crack cocaine every day. (Trial Transcript, Vol. X, 1159-1161). Defense counsel also questioned Cotton about his work with Hudson and Jones to prove drug charges against Bowens and others, inferring that Cotton had been investigated for drug offenses in the past. Cotton even testified that Hudson and Jones wanted Cotton to "set up" Bowens". (Trial Transcript, Vol. X, 1170-1171). Cotton also admitted during cross-examination that he had knowledge that Hudson had "set up" Bowens and other people by "planting dope" on them. (Trial Transcript, Vol. X, 1171-74, 1188-1189). Finally, Cotton testified that Agent Jones threatened to shoot up his trailer if he didn't follow his orders. (Trial Transcript, Vol. X, 1172-1173). As counsel elicited all the information on the stand that Bowens had hoped to glean from an interview, counsel had no need to conduct such an interview. Thus, Bowens' allegation is contradicted by the record and will be dismissed. Therefore, as the allegations in Grounds Five and Seven are contradicted by the record, they will be dismissed as frivolous.

**No Substantive Merit: Grounds Eight, Nine, and Eleven**

In Ground Eight, Bowens alleges that counsel was ineffective because he did not object to the testimony of government witness Melvin Shipp, who mentioned in his testimony that Bowens had been incarcerated – and upon release – took over an illegal drug operation from

Shipp. He argues that Shipp's testimony improperly put his criminal history before the jury, thus causing prejudice to his defense. Bowens also alleges that counsel failed to investigate the Shipp's signature on two affidavits exonerating Bowens of dealing crack cocaine at that time. Bowens alleges that Shipp testified at an unspecified trial that he did not sign two affidavits exonerating Bowens, when Shipp actually did sign the affidavits.

First, Shipp's testimony mentioning Bowens' incarceration is set forth below in its entirety:

> Q: All right. Did there come a time, sir, after that that Mack Arthur Bowens moved into the house with you at Sears Street?
>
> A: Yes, sir.
>
> Q: An approximately when was that?
>
> A: Around in '96 *when he got out of jail*.

(Trial Transcript, Vol. X, p. 1090) (emphasis added).

The trial of Bowens and Hampton lasted two weeks. Shipp's six-word mention of Bowens' incarceration – in light of two weeks' worth of testimony given at the trial – could hardly have affected the trial's outcome, especially given the overwhelming evidence of Bowens' guilt. As such, Bowens has not met the prejudice prong of the *Strickland* standard of review for ineffective assistance of counsel claims. In addition counsel's strategic choices – made after thorough investigation of the law and facts – are "virtually unchallengeable." *Strickland* at 690. As stated previously, Bowens' defense counsel had clearly conducted a thorough investigation in preparation for trial. And, given the single passing mention of Bowens' incarceration, lasting less than two seconds, counsel's decision not to object was a reasonable one. Such an objection would have served only to call additional attention to the very

fact Bowens wished to keep from the jury. For these reasons, Bowens' claim based upon the brief mention of his incarceration will be denied.

Bowens also claims in Ground Eight that, during another trial, Shipp denied signing two affidavits exculpating Bowens, somehow harming Bowens' defense in the present case. This claim is frivolous, as Shipp testified – at the trial in this case – that he indeed signed those affidavits. Given that exculpating testimony – on the record in the present case – counsel need not have investigated the signatures. Thus, counsel performed adequately, and this claim will be dismissed as frivolous. Accordingly, Bowens' claims in Ground Eight will be dismissed.

In Ground Nine, Bowens argues that appellate counsel did not inform the Fifth Circuit (after its ruling affirming this court's judgment on direct appeal) that this trial judge presided over both Bowens' criminal trial, as well as the civil case Rubby Lee Gooden filed against Jerome Hudson and others, alleging that the defendants had illegally held her against her will during the time leading up to the trial of this case. Gooden's case settled prior to a trial, and the defendants admitted no wrongdoing. Bowens argues that the same judge first decided the issue of Gooden's detention in a manner detrimental to Bowens during the criminal trial, then decided the same issue in a manner that would have been beneficial to Bowens during Gooden's civil trial. Bowens believes that this sequence of events shows that the court conspired with others to ensure his conviction in this case.

Bowens does not make clear in Ground Nine precisely how these facts affected his defense. It appears that he is arguing that the judge presiding of Bowens' criminal trial should have recused himself from Gooden's civil case. Bowens does not, however, provide any authority for this position. First, there is nothing improper about a single judge presiding over a

criminal case and a civil case arising out of the same events. *United States v. Todd*, 245 F.3d 691 (8th Cir. 2001). In addition, cases in this district are assigned randomly; as such, district judges do not participate at all in the assignment of cases, a fact undermining Bowens' claim that the court took on the case for a nefarious purpose. Further, in a similar context, a judge's adverse ruling, *even when later reversed or vacated on appeal*, does not by itself constitute grounds for recusal. *Garcia v. Woman's Hospital of Texas*, 143 F.3d 227 (5th Cir. 1998). In this case, the court's ruling on the nature of Gooden's detention and its effect on Bowens' criminal case were affirmed on appeal. Thus, the adverse ruling, though detrimental to Bowens' case, was the correct one. The court cannot discern how any aspect of Rubby Lee Gooden's civil suit against Jerome Hudson could have impacted the Fifth Circuit's decision on the direct appeal of this case given the tremendous amount of evidence adduced against Bowens at trial. For these reasons, Bowens' claim in Ground Nine meets neither the deficiency nor the prejudice prongs of the *Strickland* ineffective assistance of counsel test. As such, this claim will be denied.

Finally, in Ground Eleven, Bowens joins his co-defendant Willie Hampton in claiming that the federal authorities did not have jurisdiction over his person because the state had charged him first, and the state did not dismiss those charges before the federal government began a separate prosecution arising out of the same acts. This court rejected Hampton's arguments on this issue – and for the same reasons given in its December 19, 2007, memorandum opinion in this case, the court also rejects Bowens' arguments.

### A Note on the Weight Given to the Various Post-Trial Affidavits Submitted in This Case

During this entire criminal case, dating from long before trial to the filing of the present § 2255 motion, Mack Arthur Bowens has submitted affidavits from various government witnesses

as proof that he is innocent of the charges for which he has been convicted. As this court has held previously, the affidavits of Rubby Gooden hold little weight, particularly in light of her testimony at trial, where she faced rigorous cross-examination. In addition, the jury found Bowens guilty of obstruction of justice as charged in Count Nine of the superseding indictment – for causing "a witness in a federal criminal case to sign a false and fraudulent affidavit in an effort to undermine" the witness's testimony. Indeed, George Butler testified for the prosecution that Bowens drove him to the country, accused him of being a snitch and wearing a wire, pointed a gun at him, and said, "I'll kill you if you set me up." As Bowens has already been convicted of intimidating witnesses, new affidavits from witnesses in the trial – affidavits at odds with their trial testimony – have virtually no credibility at all. Bowens' incarceration would be little impediment to his reaching out to criminal cohorts to obtain such exculpating affidavits by any means necessary.

In sum, all of Bowens' grounds for relief in the instant motion to vacate, set aside, or correct his sentence are either procedurally barred, frivolous, or without substantive merit and will be dismissed with prejudice. A final judgment consistent with this memorandum opinion issue today.

**SO ORDERED,** this the 30th day of March, 2011.

/s/ W.Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE